UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00506-FDW

| | |
|---|---|
| BRIAN C. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's ("Commissioner's") Motion for Summary Judgment (Doc. No. 14). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Disability and Disability Insurance Benefits under 42 U.S.C. § 405(g).[1] Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

**I.   BACKGROUND**

Plaintiff filed an application for Title II benefits on December 10, 2013, alleging disability since June 21, 2013 as a result of a back injury, depression, and difficulties with his hearing and left foot. (Tr. 114, 223, 243). Plaintiff's application was initially denied on June 5, 2014 and again

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

upon reconsideration on February 24, 2015. (Tr. 147, 156). Plaintiff subsequently filed a request for a hearing on April 21, 2015. (Tr. 164). On January 25, 2017, Administrative Law Judge James Griffith ("ALJ") conducted a video hearing from his office in St. Louis, Missouri, while Plaintiff and his attorney were in Charlotte. (Tr. 78-81). The ALJ denied Plaintiff's application in a written decision dated March 13, 2017. (Tr. 9-24).

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 13-14); 20 C.F.R. § 404.1520(a). At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 21, 2013. (Tr. 14). At the second step, the ALJ had several "severe impairments," as defined in 20 C.F.R. § 404.1520(c), including degenerative arthritis, hearing loss, sciatica, and hallux valgus. (Tr. 14); 20 C.F.R. § 404.1520(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). At the third step, the ALJ found Plaintiff did not have an impairment or combination thereof that met or medically equaled any of the listed impairments ("the Listings") found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

During his residual function capacity ("RFC") analysis, the ALJ determined Plaintiff:

[H]as the residual function capacity to perform a range of light work . . . . Specifically, [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk two to four hours and sit about six hours in an eight-hour workday, with normal breaks; cannot climb ladders or scaffolds or crawl; only occasionally can use ramps and stairs, stoop, kneel, and crouch; and should avoid concentrated exposure to noise.

2

(Tr. 18). At step four, the ALJ found Plaintiff could perform his past work as a security guard "as generally performed." (Tr. 23). The ALJ noted although the vocational expert ("VE") testified Plaintiff's RFC would preclude performance of the security guard position as Plaintiff performed it in the past, the position as defined in the Dictionary of Occupational Titles ("DOT") and as generally performed in the national economy would be available to Plaintiff. (Tr. 23). Accordingly, the ALJ decided Plaintiff is not disabled under the Act. (Tr. 24).

After receiving the written decision, Plaintiff requested a review of the ALJ's decision, which was denied by the Appeals Council on June 22, 2017. (Tr. 1). Therefore, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought the present suit before the Court to challenge the Commissioner's decision, and the case is now ripe for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

5

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Here, Plaintiff alleges the ALJ erred in three ways: (1) failing to provide a function-by-function analysis of non-exertional mental functions associated with Plaintiff's mental impairments, (2) failing to give legally sufficient reasons supported by substantial evidence for finding Plaintiff's testimony not entirely credible, and (3) failing to adequately explain the basis of the RFC assessment as it relates to expert medical testimony (Doc. No. 12, p. 4). The Court addresses each argument in turn.

**A. Non-exertional Capacity and the RFC Assessment**

As his first assignment of error, Plaintiff asserts the ALJ failed to discuss his mental limitations, which the ALJ recognized during his step two analysis (Doc. No. 12, p. 7); (Tr. 16-17). Specifically, Plaintiff argues, "[a]t issue in this case is . . . whether the ALJ fully accounted for his own mild limitations findings in the residual functional capacity" (Doc. No. 12, p. 8).

Federal regulations define the RFC as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). "The RFC

6

assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The plaintiff carries the burden of proof to show he is disabled. 20 C.F.R. § 404.1512(a). When a claimant has multiple impairments, the ALJ must consider the cumulative effect of those impairments in making a disability determination. 42 U.S.C. § 423(d)(2)(B); see also Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) ("[A]n ALJ must consider the combined effect of a claimant's impairments."). A failure to conduct the function-by-function analysis "could result in the adjudicator overlooking some of an individual's limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4. This, in turn, "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work as it is *generally performed* and an erroneous finding that the individual is not disabled." Id. (emphasis added).

In Mascio, the Fourth Circuit reminded ALJs they needed to analyze functions a claimant can perform in narrative form. Mascio, 780 F.3d at 636-37. "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). There, the ALJ determined the functions he believed the plaintiff could still perform despite having moderate limitations, but did so in a conclusory manner, therefore frustrating "meaningful review" and requiring remand. Id. at 636-38. In other words, when a court is "left

7

to guess about how the ALJ arrived at his conclusions on . . . ability to perform relevant functions . . . remand is necessary." Id. at 637.

Notably, the court has held a mild limitation does not invoke the requirements of Mascio. Hardy v. Berryhill, No. 3:16-CV-00746-FDW, 2018 WL 1385412, at *5 (W.D.N.C. Mar. 19, 2018) ("[T]his case is distinguishable from Mascio, which dealt with a finding of 'moderate' limitations, not mild limitations as Plaintiff suffers here.") (collecting cases where a mild limitation does not invoke the Mascio requirements); see also Barnes v. Berryhill, No. 5:17-cv-00052-RJC-DCK, 2018 WL 1004746, at *1 (W.D.N.C. Feb. 21, 2018) ("This Court does not interpret Mascio's holding as extending to all restrictions."); Brooks v. Berryhill, No. 3:15-cv-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) ("Mascio dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."); Gilbert v. Berryhill, No. 5:16-cv-00100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) ("As this court has previously held, Mascio discussed *moderate* limitations, not those that are found to be mild. Mascio specifically dealt with limitations that were found to be moderate, whereas here the limitations are either non-existent or mild.") (emphasis in original); Roberson v. Colvin, No. 3:15-cv-00570-MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio *per se*.").[2] Moreover, in the Hardy decision, the Court also noted "Plaintiff has not pointed

---

[2] The Court notes, as did the Barnes court, that district courts in the Western District of North Carolina are split on this issue. See, e.g., Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitation in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.").

to any evidence of record demonstrating an inability to stay on task or other evidence to conflict with the ALJ's findings or conclusions." Hardy, 2018 WL 1385412, at *5.

In Reinhardt, the court remanded, in part, because the ALJ failed to return to a discussion of the plaintiff's mental limitations during the RFC analysis. Reinhardt, 2015 WL 1756480, at *4. Some of the cases distinguishing between mild and moderate limitations also differentiate themselves from Reinhardt in that the ALJ in the other cases did, in fact, return to a discussion of mental health limitations. E.g., Hardy, 2018 WL 1385412, at *6 ("[T]his case is distinguishable from Reinhardt. . . . [T]he ALJ discussed a great deal of medical evidence relevant to Plaintiff's mental impairments. Moreover, those findings above are supported by substantial evidence."); Roberson, 2016 WL 5844148, at *6 ("[T]his case is distinguishable from Reinhardt. In Reinhardt, 'the ALJ never returned to any discussion of [the claimant's] mental impairments in his RFC findings and therefore omitted any mental impairment when creating an RFC.' Such is not the case here." (quotation omitted)).

The present case is likewise distinguishable from Mascio and Reinhardt. What differentiates Mascio from the present case is the claimant there suffered from moderate limitations, whereas Plaintiff here has mild limitations. Mascio, 780 F.3d at 638; (Tr. 16-17). The ALJ "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments" and ultimately reached the conclusion that Plaintiff's "mental impairments are non-severe." (Tr. 16). Specifically, the ALJ found the claimant had a mild limitation in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 16-17); see also 20 C.F.R. Part 404, Subpart P,

Appendix 1. "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas," the ALJ decided Plaintiff has non-severe mental impairments. (Tr. 17); see also 20 C.F.R. § 404.1520a(d)(1). Given Plaintiff's mild limitations and the ALJ's ultimate conclusion of non-severe mental impairments, the Mascio requirement for the ALJ to express moderate or greater limitations in terms of RFC do not apply here.

Even if the Mascio requirements did apply to all restrictions regardless of severity, the present case does not raise the same concern evident in Reinhardt. Prior to conducting the RFC assessment, the ALJ acknowledged:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment . . . The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . . Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.

(Tr. 17). Thus, not only was the ALJ aware that he needed to undertake a separate RFC analysis, but he clearly indicated his intention to use the limitations he found during Step Two as part of his RFC assessment. During his subsequent assessment, the ALJ returned to his consideration of Plaintiff's mental health and limitations. He noted "[t]he objective medical evidence and the claimant's treatment history do not fully support his allegations of the severity of his functional limitations." (Tr. 20). The ALJ noted Plaintiff underwent "no significant mental health treatment." (Tr. 20). Moreover, "[t]he routine follow-up appointments evidenced in the record are not indicative of the excruciating levels of pain and mental distress the claimant has reported," and Plaintiff "repeatedly [had] normal mental status examination findings." (Tr. 20).

As the Court noted in Hardy, "Ultimately, this Court's role is to determine whether the ALJ's RFC analysis considered the relevant functions, whether that decision provides a sufficient basis to review the conclusions, and ultimately whether that decision is supported by substantial evidence in the record." Hardy, 2018 WL 1385412, at *6.  When a court is not "left to guess," as it was not in Hardy, the Court turns to whether the ALJ provided substantial evidence to base his decision.  Id.  Here, there is no guesswork in understanding the ALJ's decision; first because there was no Mascio duty for the ALJ to express mild non-exertional limitations in terms of RFC, and second, because the ALJ offered substantial evidence during his RFC assessment addressing those mental limitations.  Accordingly, Plaintiff's first assignment of error is rejected.

**B. Credibility of Plaintiff's Testimony**

As his second assignment of error, Plaintiff contends the ALJ erred in making a credibility determination (Doc. No. 12, p. 12).  Plaintiff argues the ALJ used inappropriate boilerplate language and inappropriately ruled on Plaintiff's credibility as it pertained to daily activities and the negative inference the ALJ made (Doc. No. 12, pp. 12-13, 16).  Defendant counters even if the ALJ used such language, it would be harmless provided the ALJ analyzed credibility elsewhere (Doc. No. 15, p. 11-12).

The Fourth Circuit in Mascio determined the use of boilerplate language in assessing credibility is inappropriate.  Mascio, 780 F.3d at 639.  The reason was two-fold.  First, the court determined using boilerplate language determining RFC prior to addressing credibility "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)).  Second, the court held the use of boilerplate language to be contrary to the Social

Security Agency's own regulations. Id.; see also 20 C.F.R. § 416.929(a) ("We will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can be reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [the claimant's] ability to work."). The Mascio court went on, however, to state "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." Mascio, 780 F.3d at 639.

When evaluating a claimant's subjective reports of pain and other symptoms, the regulations require a two-step process. First, there must be "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b); see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) ("Therefore, for pain to be found disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*.") (emphasis in original).

Second, if there is such evidence, the ALJ must:

> [C]onsider [the claimant's] statements about the intensity, persistence, and limiting effects of [the claimant's] symptoms, and [he] will evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant is] disabled. [He] will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [the claimant].

20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). As the Fourth Circuit noted in Craig, "[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may

not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her pain." Craig, 76 F.3d at 595 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis and alterations in original). There, the ALJ did not consider the first question in his analysis, and thus the Fourth Circuit remanded for the ALJ to determine whether the claimant did, in fact, have "an objectively identifiable medical impairment that could reasonably cause the pain of which she complains." Id. at 596.

As part of the credibility analysis of the second step, the "evaluation 'requires the ALJ to determine the degree to which claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between claimant's statements and the rest of the evidence.'" McLawhorn v. Colvin, No. 2:13-CV-00024-FDW, 2014 WL 2215936, at *4 (W.D.N.C. May 29, 2014) (quoting Aytch v. Astrue, 686 F.Supp.2d 590, 604 (E.D.N.C. Feb. 18, 2010)); see also Mascio, 780 F.3d at 639 ("[T]he ALJ here should have compared Mascio's alleged functional limitations from pain to the other evidence in the record . . . ."). In Hutchins v. Colvin, the Court noted "[t]he ALJ proceeds to restate Plaintiff's extensive medical history in his decision, but does not make clear how that evidence relates to Plaintiff's credibility. . . . the ALJ does not further discuss how this evidence related to Plaintiff's claimed limitations." No. 1:15-cv-00186-FDW, 2016 WL 3513397, at *3 (W.D.N.C. June 27, 2016). Thus, to properly determine Plaintiff's credibility in considering the medical evidence, the ALJ needs to relate the evidence to Plaintiff's arguments. Id.

Additionally, the court has rejected a plaintiff's complaint that an ALJ's "'negative inference' equates to relying on extra-record evidence . . . ." Barnes, 2018 WL 1004746, at *3

13

(quotations omitted). There, the ALJ noted "[n]o treating source opined that Plaintiff has disabling impairments." Id. (quotations omitted). The rationale for this was such a sentence "merely summarized the overall effect of the detailed medical evidence the ALJ summarized prior" and did not create a new reliance on information off the record. Id. at *4. Other courts have taken a similar stance on this issue. Kirk v. Colvin, No. 4:13-CV-02735, 2015 WL 5915748, at *18 (M.D. Pa. Oct. 8, 2015) (noting such a negative inference is one which is permitted by regulations); see also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Here, the ALJ did appear to use boilerplate language when he said:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce symptoms; the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms, however, are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these impairments have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(Tr. 18). Pursuant to Mascio, however, this language constitutes harmless error because the ALJ properly analyzed credibility elsewhere in his decision. Mascio, 780 F.3d at 639. Specifically, the ALJ followed the two-step process as required by regulation. (Tr. 18); see also, 20 C.F.R. § 404.1529(b)-(c); Craig, 76 F.3d at 594-95. The ALJ undertook an extensive examination of Plaintiff's objective medical history prior to discussing the evidence and treatment history inconsistent with the degree of limitation he alleged. (Tr. 19-21). The ALJ took great effort to explain how the evidence related to Plaintiff's alleged limitations, such as when he noted, for example, "[t]he routine follow-up appointments evidenced in the record are not indicative of the

14

excruciating levels of pain and mental distress the claimant has reported. The claimant testified at the hearing that he unintentionally lost considerable weight, but the treatment notes actually reflect that the weight loss was intentional." (Tr. 20) (citations omitted). The ALJ's written decision is replete with other examples where Plaintiff's allegations do not reflect the degree of limitations the objective medical evidence would reasonably indicate. (Tr. 20-21).

This is also true in the context of discussing Plaintiff's daily activities. Despite Plaintiff's contention that "the ALJ offered no explanation as to what activities he is specifically referring to" (Doc. No. 12, p. 14) the ALJ noted Plaintiff's ratings "appear to have been made based on the remarks from the claimant himself, who reported maintaining an active lifestyle . . . including walking up to two miles a day and doing volunteer work with his church . . . ." (Tr. 23). The Court notes these activities are not sporadic, as Plaintiff contends they are (Doc. No. 12, p. 14), but occur regularly. (Tr. 23) ("[W]alking up to two miles *a day*.") (emphasis added). The ALJ specifically considered Plaintiff's daily activities and how they related to the objective medical evidence. Thus, the ALJ's error in addressing credibility prior to the discussion of the objective medical evidence was harmless because he ultimately did not leave the Court to guess his reasoning. See Mascio, 780 F.3d at 637; see also Hardy, 2018 WL 1385412, at *6.

Furthermore, Plaintiff's argument that the ALJ improperly relied on a negative inference is without merit. As this and other courts have held, an observation that "no treating doctor has placed limitations on the claimant or stated that he is unable to work" rise to the level of off-the-record evidence. (Tr. 21); Barnes, 2018 WL 1004746, at *5. The Court further notes Plaintiff has an affirmative duty of proving disability; the ALJ's observation of the lack of evidence supporting Plaintiff's position can be alternatively described as the ALJ remarking that Plaintiff failed to meet

his burden of proof. See 20 C.F.R. § 404.1512(a)(1). Furthermore, the ALJ relied on other substantial evidence in reaching his decision.

## C. Explanation of the RFC Assessment

As his third and final assignment of error, Plaintiff argues "the ALJ failed to explain adequately the basis of the RFC and appears to have relied on his own lay assessment of the raw medical data" (Doc. No. 12, p. 20). Plaintiff invokes the function-by-function requirements of SSR 96-8p as authority supporting its position. See SSR 96-8p, 1996 WL 374184, at *1; (Doc. No. 12, p. 20). Defendants contend the ALJ accurately reviewed the record, synthesized the evidence, and was not obligated to afford great weight to any single expert medical opinion (Doc. No. 15, p. 11).

Per the requirements of SSR 96-8p, when an ALJ is conducting his RFC assessment, he must "assess [the claimant's] work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1. Only after the function-by-function analysis may the RFC be expressed in terms of exertional levels of work. Id. Additionally, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. at *7. Furthermore, federal regulations require the ALJ to consider six aspects when weighing medical opinions: (1) the examining relationship, (2) the treatment relationship, (3) the extent to which the medical expert provides support for the opinion, (4) consistency of the opinion with the entire record, (5) whether the medical expert is a specialist testifying about medical issues involving his or her specialty, and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

16

In considering the RFC finding, the Fourth Circuit, in an unpublished opinion, rejected the notion that an ALJ must obtain (and presumably rely on) expert medical opinion testimony because the ALJ is a layman. Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011). The court reasoned the RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." Id. at 230-31; see also 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on *all of the relevant medical and other evidence*.") (emphasis added).

Other district courts in the Fourth Circuit have interpreted this issue in a similar manner. For example, in Stephenson v. Commissioner, the magistrate judge concluded "[a]n ALJ need not parrot a single medical opinion, or even assign 'great weight' to *any* opinions, in determining an RFC." Stephenson v. Comm'r, Soc. Sec. Admin., 2013 WL 1345085, at *3-4 (D. Md. Apr. 1, 2013) (Letter to Counsel noting "[d]espite the informal nature of this letter, it should be flagged as an opinion.") (emphasis added). There, the court affirmed an ALJ's decision considering expert medical opinions and assigning them weight based on their consistency with the claimant's medical history. Id. at *3. The court went on to note "[t]he decision to not rely on a single medical opinion does not invalidate the RFC." Id.

Here, the Court agrees with the Stephenson decision in noting the ALJ was under no obligation to give "great weight" to any particular expert testimony. Instead, as the regulations state, the ALJ is under an obligation to review the entire record and make his decision "based on *all of the relevant medical and other evidence*," 20 C.F.R. § 404.1545(a)(3) (emphasis added), which he did here. When he considered the expert medical opinions, the ALJ addressed and explained why he did not award the medical opinions greater weight than he did. (Tr. 21-22) (For

17

example, the ALJ noted one expert used vague terms and "failed to offer specific functional limitations," but still discovered findings consistent with the ALJ's determinations. (Tr. 21). The ALJ observed another expert based "his conclusions . . . exclusively on the claimant's subjective report of symptoms" and two other experts gave testimony conflicting with Plaintiff's denial of mental symptoms and normal mental examinations. (Tr. 22). Even where expert medical testimony was unfavorable for Plaintiff, the ALJ gave it little weight because the evidence on the record "support[ed] greater limitations than offered by" the expert. (Tr. 22).

Plaintiff fails to identify a factor listed in 20 C.F.R. § 404.1527(c) the ALJ failed to consider when addressing expert medical opinions. Moreover, the ALJ was not obligated to give any expert medical opinion significant or controlling weight. Accordingly, the Court must uphold the ALJ's decision because it is consistent with regulations and caselaw and because it is based on substantial evidence.

## IV.    CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: July 16, 2018

Frank D. Whitney
Chief United States District Judge